## Case No. 15,776.

### UNITED STATES ex rel. CARHART v. MILLER COUNTY.

[4 Dill. 233.] [1]

Circuit Court, E. D. Arkansas. 1878.

COUNTY WARRANTS—RIGHTS OF JUDGMENT CREDITOR—MODE OF ENFORCING JUDGMENT—PROVISIONS OF THE CONSTITUTION OF ARKANSAS.

1. Payment of judgments rendered on ordinary warrants issued by counties in Arkansas, can only be enforced in the manner provided by the constitution and laws of the state.

2. The present constitution of the state, as to the rights and remedy of the holder of such warrants, distinguishes between those issued before and those issued after its adoption.

3. A relator, whose judgment is based on county warrants issued after the adoption of the present constitution, is not entitled to the levy of a tax to pay such judgment in excess of the constitutional limitation, nor to have part of the general tax specially appropriated and set aside to pay such judgment. Aliter, as to judgments on negotiable bonds issued under acts which require or authorize the levy of a special tax to pay them, and as to judg-

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ments upon warrants issued prior to the adoption of the present constitution of the state.

[Cited in Board of Com'rs of Grand Co. v. King, 14 C. C. A. 429, 67 Fed. 207.]

On the 28th day of October, 1876, the relator recovered in this court a judgment against Miller county, for the sum of $7,267.52 and costs of suit. This judgment was recovered on ordinary county warrants, issued for the ordinary expenditures of the county accruing since the date of the adoption of the present constitution. Article 16 of the present constitution of the state, which went into effect on the 30th day of October, 1874, contains these provisions:

"Sec. 9. No county shall levy a tax to exceed one-half of one per cent for all purposes; but may levy an additional one-half of one per cent to pay indebtedness existing at the time of the ratification of this constitution.

"Sec. 10. The taxes of counties, towns, and cities shall only be payable in lawful currency of the United States, or the orders or warrants of said counties, towns, and cities respectively.

"Sec. 11. No tax shall be levied except in pursuance of law. and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."

The revenue act of the state declares that it shall be unlawful for the county court to levy, "for all general county purposes," a rate exceeding five mills. Act March 5, 1875, p. 223, § 3. By an act approved December 14, 1875, it is provided "that all county warrants and county scrip shall be receivable for any taxes for county purposes," with this limitation only, that the collector shall not "receive scrip issued since the adoption of the constitution in payment of the tax levied to pay the indebtedness existing before the adoption of the constitution."

The relator sued out an alternative writ of mandamus, requiring the county court to show cause why it should not levy a tax of five mills on the dollar on the taxable property of the county, payable in currency, and apply the same, or such portion thereof as this court may direct, towards the payment of the relator's judgment. To this writ the county court returns, in substance, that the relator's judgment was recovered on ordinary county warrants. issued for the ordinary expenditures of the county accruing since the 30th day of October. 1874; that each and every year since the said warrants were issued, including the current year, the county court has levied on all the taxable property of the county, for "general county purposes" (which are set out in detail), a tax of five mills on the dollar; that the revenue derived from said levies has not in any of said years been sufficient to pay the ordinary current expenses of the county for the year; that the like rate of tax for ordinary county purposes will be levied for the year 1878, and each year thereafter; that such levies will be in the future, as they have been in the past, inadequate to defray the necessary current expenses of the county. The case is before the court on a demurrer to this return.

E. W. Kimball, for relator.

J. M. Moore, for the county.

Before DILLON, Circuit Judge, and CALDWELL, District Judge.

CALDWELL, District Judge. No court, state or federal, can by mandamus compel the levy of a tax not authorized by some law of the state applicable to the case. Supervisors v. U. S., 18 Wall. [85 U. S.] 71; Burroughs, Tax'n, § 91; U. S. v. City of New Orleans [Case No. 15,871]; Vance v. City of Little Rock, 30 Ark. 435; U. S. v. County of Clark, 95 U. S. 769.

In the last case cited, the court say: "It need not be said that no court will, by mandamus, compel county officers of a state to do what they are not authorized to do by the laws of the state. A mandamus does not confer power upon those to whom it is directed. It only enforces the exercise of power already existing when its exercise is a duty."

The counsel for the relator does not question the soundness of this proposition, and does not ask the court to require the county to levy a rate in excess of five mills, but insists that it should require the levy of that rate and the application of all or some portion of it to the payment of the relator's judgment.

Except to pay debts contracted before its adoption, the constitution of this state limits the rate of taxation that may be imposed by a county "for all purposes" to five mills on the dollar, and provides that such tax may be paid in lawful currency, or the orders or the warrants of the county; and these constitutional provisions are supplemented by acts of the legislature declaring it to be unlawful for the county. court to levy "for all general county purposes" a rate exceeding five mills, and declaring that all county warrants shall be receivable for all county taxes, except those levied to pay debts existing before the adoption of the constitution.

No power is given to levy a special tax to pay the class of warrants upon which the relator's judgment was rendered, and no special authority is given to appropriate or apportion any part of the five mill tax that may be levied to the payment of such warrants or judgments recovered thereon.

This was the law when the warrants were issued upon which the relator's judgment was rendered. The relator knew this to be the law when he received the warrants, and must have known that if the ordinary expenses of the county exceeded the revenue derived from the tax the county was authorized to levy, the warrants could not be discharged in money. and were only valuable as a legal tender in payment of all county taxes, with the exception mentioned.

If this court could require the county to set apart any portion of the five mills the county is authorized to levy, and require such portion to be collected in currency to pay the relator's judgment, it could appropriate the whole levy for that purpose, and require all of it to be collected in currency. The constitution and laws of the state forbid that this should be done. It would be an infringement upon the constitutional right that every holder of like warrants has to pay his county taxes in such warrants, and would be a violation of the whole theory and policy of the constitution of the state in relation to the conduct and administration of county affairs under that instrument.

It is impossible to distinguish this case from the case of Supervisors v. U. S., 18 Wall. [85 U. S.] 71. Mr. Justice Strong, in delivering the opinion of the court in that case, says: "In this case, the warrants upon which the relator's judgment was obtained were all ordinary warrants, drawn upon the treasurer of the county, and, as is admitted by the demurrer, drawn for the ordinary expenses of the county; they were such instruments as the legislature contemplated might be employed in conducting the current and usual business of the county. The act which empowers the county board to levy a tax for ordinary county revenue speaks of them, and evidently intends that they shall be satisfied, either from the proceeds of that tax or by their being received in payment thereof. They are simply a means of anticipating ordinary revenue."

And the court held, in that case, that, under the laws of Iowa, which are, so far as relates to ordinary county warrants as construed by her courts, in legal effect identical with the laws of this state, the county could not be required to levy a special tax to pay such warrants. In its practical results, there is no difference between a special tax and the special appropriation of the whole or a part of a general tax for a particular purpose. Neither can be done in the absence of a law sanctioning it.

The relator does not suggest that there is any money in the treasury applicable to the payment of the warrants on which his judgment was rendered, or that the levy of the maximum rate of county taxes will result in placing funds applicable to this purpose in the treasury, and the fact is conceded to be otherwise, for the county tax each year is paid in the warrants of the county, leaving at the end of each year large amounts of warrants outstanding.

This case must not be confounded with the case of judgments on negotiable bonds issued by counties prior to the adoption of the present constitution, under authority of acts of the legislature, which authorize and require the levy of a special tax, or of a tax sufficient in amount to pay interest on such bonds, and the bonds themselves at maturity; nor with the case of judgments on county warrants issued prior to the adoption of the present constitution.

In the case of bond judgments, the authority and duty of the county court to levy a tax to pay them are found in the law authorizing their issue; and in the case of judgments rendered on warrants issued prior to the adoption of the present constitution, the right to levy a tax of five mills to pay them is found in the last clause of section 9 of article 16 of the constitution [of 1874]. But the laws applicable in the case last mentioned have no application to the relator's judgment, which was rendered on warrants issued subsequent to the adoption of the present constitution, and must be governed by it and laws passed under it. The demurrer to the return to the alternative writ is overruled, and the peremptory writ refused. Judgment accordingly.

NOTE. In U. S. v. Jefferson Co. [Case No. 15,472], the relators having recovered judgment on negotiable bonds issued under the act of April 29, 1873, which required the "levy of a special tax" to pay them, Caldwell, J., in an exhaustive opinion, reviewing the cases, decided the following propositions as applicable to all judgments on negotiable bonds issued prior to the adoption of the constitution of 1874, under acts requiring the levy of a sufficient tax to pay the same:
1. Where a statute authorizes a county to issue its negotiable bonds, and makes it the duty of the county court "to levy a special tax of sufficient amount to pay the interest and principal of said bonds, as the same become due," the power of taxation, thus given, enters into and becomes a part of the obligation of the contract between the county and every holder of such bonds; and, under the constitution of the United States, this obligation of the contract cannot be impaired or lessened in any degree by the constitution or laws of the state afterward enacted.
2. In such case, it is the duty of the county court to levy, and cause to be collected, a tax sufficient in amount to pay the interest and principal of such bonds as the same mature, and if it does not perform this duty, it may be compelled to do so by mandamus.
3. The restriction on the taxing power of counties contained in the constitution of 1874, does not repeal or impair the provisions of prior laws under which bonds were issued requiring the levy of a special tax to pay the interest and principal of such bonds, as they become due.