VILLAGE OF OSHKOSH v. FAIRBANKS, MORSE & CO.

SAME v. McGRAW CO.

(Circuit Court of Appeals, Eighth Circuit. September 14, 1925.)

Nos. 6894, 6895.

1. Municipal corporations ⬤⟞244(1)—Municipality liable, like individual, for material for waterworks or lighting plant.

A village, in constructing waterworks and electric lighting plants, acts in its purely private business capacity, and its measure of liability for material entering into their construction is the same as that of a private individual or corporation under like circumstances.

2. Municipal corporations ⬤⟞863—Statute held not to limit power to construct lighting plant to certain cost.

Laws Neb. 1919, c. 181, empowering a village to construct lighting system, and providing that the cost may be defrayed by a tax of five mills on the dollar, or, when such tax is insufficient, by issuance of bonds, and limiting the amount of bonds that may be issued therefor to 10 per cent. of the taxable value of the property in the village, does not limit power to construct a plant to one costing not more than the amount of bonds that may be so issued.

3. Action ⬤⟞12—No defense that judgment may be worthless.

One may have judgment against a village on a contract which was in its power to make, irrespective of whether there is any legal method by which payment thereof can be compelled.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Two actions, one by Fairbanks, Morse & Co., and the other by the McGraw Company, against the Village of Oshkosh. Judgments for plaintiffs, and defendant brings error. Affirmed.

F. A. Dutton, of Oshkosh, Neb., and T. F. Hamer, of Kearney, Neb. (W. V. Hoagland

and E. E. Carr, both of North Platte, Neb., and Thomas W. Bockes, of Omaha, Neb., on the brief), for plaintiff in error.

J. J. Halligan, of North Platte, Neb., and Carl E. Herring, of Omaha, Neb. (R. H. Beatty, of Brady, Neb., and Victor Halligan, of North Platte, Neb., on the brief), for defendants in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. Defendants in error recovered judgments for machinery and material furnished by them respectively to plaintiff in error which went into the construction of its municipal water-works plant and its electric lighting plant. Since the plants were completed the village has been operating them for municipal purposes and to supply the needs of its inhabitants, but it now says it was without power to make the purchases of defendants in error, that those transactions are void and it is not liable. All of the specifications of error challenge liability because of a claimed lack of municipal power. The village issued its bonds for $10,000 for the lighting plant, the maximum amount permitted by the Nebraska statute for that purpose, sold them at par and the proceeds were not sufficient to pay for that plant; it issued its bonds for $20,-000 for the water-works plant, the maximum amount permitted by the statute for that purpose, sold them at par and the proceeds were not sufficient to pay for that plant. And being without funds it has not paid either of these claims.

An engineer employed by the village prepared plans and specifications for each plant, on which he estimated the cost of the lighting plant at $24,250 and of the water-works plant at $34,000. The village then advertised for and received bids on prices for machinery, material and labor that would be needed in construction. The bids of defendants in error and the bids of others for different parts were accepted and the plants were then constructed by the village at a cost of several thousand dollars more than the estimates. The $30,000 that had been received for the bonds was applied, but nothing was paid to defendants in error. The village board passed two ordinances before it received the bids; in one it was recited that money available under the bond issue would not be sufficient to construct a lighting plant, that additional funds were needed, that a majority of the legal voters had petitioned the board to make an appropriation for that purpose and the ordinance appropriated a named sum to complete that plant; in the other ordinance there were like recitals and appropriation made to complete the water-works plant. But at the time these ordinances were passed there were no funds on hand to be set aside under the appropriations. The purpose of the board was to issue warrants against these appropriations, and on their non-payment cover the indebtedness represented by outstanding warrants with refunding bonds. Counsel are not in agreement whether that can be done under the State statute.

The Nebraska statute (chapter 181, Laws 1919) conferring the power to contract and the power to levy a tax for the purchase or construction of a lighting plant is this:

"Sec. 1. Cities and villages shall have the power to purchase, construct and maintain * * * lighting systems * * * for the use of their respective municipalities and the inhabitants thereof.

"Sec. 2. The cost of such utilities may be defrayed by the levy of a tax of not to exceed five mills on the dollar valuation in any one year, for a * * * lighting plant, or, when such tax is insufficient for the purpose, by the issuance of bonds of the municipality."

Section 3 provides the course to be pursued and the steps to be taken in the issuance of bonds. Those requirements were followed. That section also contains this:

"The aggregate amount of bonds that may be issued for the construction or purchase of a * * * lighting plant shall not exceed ten per cent. * * * of the taxable value of the property within such municipality as shown by the last annual assessment."

That assessment was approximately $100,-000, being one-fifth the actual value. The section also requires an annual tax levy to pay the bonds and accruing interest. It is sufficient to say of the Nebraska statute on the subject of municipal water-works, that, for present purposes it is in substance the same as sections one and three of the statute relating to a lighting plant. It first confers power on the village to purchase or construct a system of waterworks, then provides for the issuance of bonds therefor limited in amount to 20 per cent. of the assessed value of the taxable property, and then requires the annual levy of a tax for payment of the bonds and interest.

[1] In constructing these plants the village acted in its purely private business capacity to supply itself and its inhabitants with light and water, and its measure of lia-

bility is the same as that of a private individual or corporation under like circumstances. Henry v. City of Lincoln, 93 Neb. 331, 140 N. W. 664, 50 L. R. A. (N. S.) 174; Illinois Trust & Savings Bank v. City of Arkansas City, 76 F. 271, 22 C. C. A. 171, 34 L. R. A. 518; Omaha Water Co. v. City of Omaha, 147 F. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; City of Winona v. Botzet, 169 F. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204; First National Bank v. City of Emmetsburg, 157 Iowa, 555, 138 N. W. 451, L. R. A. 1915A, 982.

[2] It is argued that the restriction in each statute on the amount of bonds that may be issued limits the cost of each plant, and this should be taken as an implied limitation on the power to contract to construct the plants; that the construction or purchase of plants for sums in excess of $10,000 and $20,000 is an ultra vires transaction. Each statute first gives the village the right to contract for the construction of a plant, and then deals with the subject of issuing bonds as a means of payment, which is referable to the taxing power of the municipality. So far as we are advised, the supreme court of Nebraska has not given to the statutes, or either of them, the construction contended for by counsel for plaintiff in error. We have been cited to no ruling of that court holding the restriction on the amount of bonds that may be issued to be a limitation on the cost of the plant, nor a limitation on the express power given to the village to contract for the construction of a plant. We think it obvious there is no legislative intent to cut down the broad and unrestricted power to construct the plants, nor was it intended that the cost should not exceed the authorized bond issue. In City of Ft. Madison v. Ft. Madison Water Co., 114 F. 292, 52 C. C. A. 204, a statute of Iowa authorized the city to contract with the owner of the water-works plant for a supply of water for hydrants, without limit in that section on the city's indebtedness to be thereby incurred. Another section of the statute provided that the indebtedness thus contracted should be paid by an annual tax levy not to exceed five mills on the dollar. The levy was made, but it was not sufficient to pay the whole indebtedness, and when sued for the balance the city defended on the ground that it had made the maximum levy and the water company was not entitled to a judgment. On that issue this court said:

"The 'special tax' authorized to be levied to pay the water rents is limited to five mills, but this is not a restriction on the power of the city to contract debts for that purpose. The power of the city to levy the special tax to pay for water is not the measure of its power to contract debts for water. There is no necessary connection between the power to contract debts and the power to levy taxes to pay them. Board v. King, 14 C. C. A. 421, 67 F. 202. The power of a municipality to contract a debt does not imply that it possesses the power to levy a special tax or any tax, to pay it; and the grant of a power to levy a special tax for some purpose does not imply a prohibition of the power to contract a debt for that purpose in excess of what the special tax will discharge. It frequently happens that a municipality may lawfully contract debts which it has no power to levy a tax to pay [citing cases]. * * * And the water company is entitled to have the amount due it under the contract judicially ascertained and judgment against the city for the same."

The legislative restriction is on the amount of indebtedness represented by the bonds, not the cost of the plant. It stops there, and there is no intimation of an intent to limit the power to contract for the plans, and for the machinery and material to be used in construction. In a practical sense, reason points the other way; for a city or village might have in hand the necessary funds, great or small, over and above the proceeds of the bond issue,—disregarding now the question of its duty to raise them by taxation.

In Slocum v. City of North Platte, Nebraska, 192 F. 252, 112 C. C. A. 510, the suit was for specific performance of a contract by which the city agreed to purchase a water-works system. The city defended on the ground that it was without power to levy a tax sufficient to pay for the property. This court, after finding that the city had the right to make the contract, held, "The power of the city to contract for the purchase of the property exists independent of its power to raise money to pay for the same."

[3] Whether there is any legal method by which defendants in error can compel payment is a subject not now in issue, we are only concerned with the question whether they are entitled to have their claims adjudicated and put in permanent form of judgments, based on the contractual obligations of the village. "The fact that a prospective judgment against a defendant in an action at law will be worthless is no defense to the action." Kimber v. Gunnell Gold M. & M.

Co., 126 F. 137, 61 C. C. A. 203. Moreover, neither of the transactions with defendants in error contravenes the statute as counsel for plaintiff in error would now have it construed; for neither the claim of Fairbanks, Morse & Co. nor that of McGraw Co. was sufficient in amount to equal either bond issue.

The judgments are affirmed.